JUDGE BERGER, dissenting.
¶ 70 By creating a wholly owned domestic subsidiary and inserting it between Oracle Corporation Japan (Oracle Japan), a corporation that exclusively does business in Japan, and the parent Oracle Corporation (Oracle) which does business in Colorado, Oracle's tax planners purportedly saved Oracle twenty million dollars in taxes and deprived Colorado of that tax revenue. While Oracle's tax planners have certainly earned their fees, I believe that the General Assembly has provided the Department of Revenue of the State of Colorado (Department) with tools to pierce this creative tax planning and assess taxes based on the economic substance of the transaction.
¶ 71 The economic substance of the transaction is that Oracle, the parent, has obtained the sole economic benefit of the sale of stock in Oracle Japan. Therefore, section 39-22-303(6), C.R.S. 2017, conferred authority on the Department to reallocate this income to Oracle and to tax it. I therefore respectfully dissent from the majority's contrary judgment.[1]
¶ 72 Section 39-22-303(6) provides as follows:
In the case of two or more C corporations, whether domestic or foreign, owned or controlled directly or indirectly by the same interests, the executive director may, to avoid abuse, on a fair and impartial basis, distribute or allocate the gross income and deductions between or among such C corporations in order to clearly reflect income.
¶ 73 In analyzing section 39-22-303(6), the majority acknowledges that it reaches conduct beyond that which would constitute tax evasion or tax fraud. I agree with the majority that while tax evasion may be a sufficient basis for the Department to exercise its discretion under section 39-22-303(6), tax evasion is not a necessary condition for the *960 Department to do so. This makes logical sense; if the reach of the statute were limited to what already violated the law, there would be little need for the statute.
¶ 74 The question remains, however, as to the precise meaning and scope of the word "abuse" as used in the statute. The term is not defined in section 39-22-303(6) or in any related Colorado tax statute. Nor have the parties cited (and I have not found) any Colorado case authority defining the term.
¶ 75 But there is a wealth of authority addressing the meaning of tax abuse in the federal system. While Colorado corporate income taxation is determined by the application of Colorado, not federal, statutes, a cursory review of Colorado taxation statutes and Colorado cases demonstrates that Colorado has borrowed heavily and often from federal tax law concepts. See, e.g. , § 39-22-102(1)(b), C.R.S. 2017 (The purpose of the "Colorado Income Tax Act of 1987" includes "[a]iding in the interpretation of the state income tax law through increased use of federal judicial and administrative determinations and precedents.").
¶ 76 In addressing the Internal Revenue Service's ability to reclassify income among related corporations, federal courts have not been nearly as deferential to corporations as the majority is here. Indeed, federal courts have construed the concept of tax abuse broadly to include four related concepts:
• Sham Transaction Doctrine: Federal courts may disallow a corporation's tax treatment of a transaction if the courts determine that the substance of the transaction lacked any purpose other than tax avoidance. See, e.g. , ASA Investerings P'Ship v. Comm'r , 201 F.3d 505, 516 (D.C. Cir. 2000).
• Economic Substance Doctrine: Federal courts accept a corporation's tax treatment of a transaction only if the corporation had a non-tax business purpose for the transaction and the transaction meaningfully improved the corporation's economic position apart from reducing its tax liability. See, e.g. , ACM P'ship v. Comm'r , 157 F.3d 231, 247-48 (3d Cir. 1998).
• Substance Over Form Doctrine: Federal courts ignore a transaction's form and instead tax the transaction based on its underlying economic substance. See, e.g. , Comm'r v. Danielson , 378 F.2d 771, 775 (3d Cir. 1967).
• Step Transaction Doctrine: Federal courts reject a corporation's tax position by integrating a series of formally separate steps into a single transaction. See, e.g. , Penrod v. Comm'r , 88 T.C. 1415, 1428 (1987).
See also Joshua D. Blank & Nancy Staudt, Corporate Shams , 87 N.Y.U. L. Rev. 1641 (2012).
¶ 77 I see no principled reason to construe the term "abuse" in section 39-22-303(6) any less expansively than the federal courts have construed tax abuse. In fact, for years federal courts have applied these common law concepts of tax abuse even in the absence of statutory authority. Only in 2010 did Congress enact legislation governing the economic substance doctrine. I.R.C. § 7701(o) (2012). That statute requires federal courts to treat a transaction as possessing economic substance if it changes the taxpayer's economic position in a meaningful way (apart from tax effects) and if the taxpayer has a substantial purpose (apart from tax reasons) for entering into the transaction. Id .
¶ 78 Given that the General Assembly has codified the doctrine of tax abuse for Colorado taxation, in the absence of any legislative direction to limit the reach of the Department's authority, I see no reason to treat tax abuse differently than the federal courts treat it.
¶ 79 The federal doctrines for remedying tax abuse may overlap and, depending on the transaction, one or more of these doctrines may authorize a court to reallocate income. Most pertinent for present purposes is the economic substance doctrine. There is no question that the economic bounty of the sale of stock of Oracle Japan inured solely for the benefit of Oracle, the parent. This is so, as noted above, because Oracle wholly owns Oracle Japan Holding, Inc. (OJH), which in turn realized the gain on the sale of the stock of Oracle Japan.
*961 ¶ 80 Thus, applying the economic substance doctrine, the income generated from the sale of stock was realized by Oracle, and the Department was authorized by section 39-22-303(6) to reallocate that income to Oracle and require Oracle to include that income in its consolidated Colorado income tax return.
¶ 81 In so concluding, I do not suggest that OJH was formed for illegitimate purposes; the record demonstrates the opposite. But, as I read the statute and understand the economic substance doctrine, it is not limited to situations in which the device used to reduce taxes is somehow itself illegitimate or a sham.
¶ 82 Regarding Department of Revenue Regulation 39-22-303.6, 1 Code Colo. Regs. 201-2, which the majority relies on to conclude that section 39-22-303(6) was superseded by section 39-22-303(11), a court is not required to give effect to administrative regulations that conflict with the plain meaning of a statute. Tivolino Teller House, Inc. v. Fagan , 926 P.2d 1208, 1215 (Colo. 1996). I think that is the case here. I see no basis for the regulation, which conflicts with the plain language of the Department's authority under section 39-22-303(6).
¶ 83 Finally, I conclude, contrary to the majority, that reclassifying this transaction is not inconsistent with the majority's construction of section 39-22-303(8), (11)(a), and (12)(c) (with which I agree). It is one thing to conclude that a statute, particularly a tax statute, requires or prohibits a particular action by the Department. That is the case here with respect to section 39-22-303(8) and (12)(c). But it is quite another thing to say that the fact that those specific statutes do not permit the action taken by the Department also requires the override of a separate statute that authorizes reallocation of income to avoid abuse. Mason v. People , 932 P.2d 1377, 1380 (Colo. 1997) (concluding that if the General Assembly intended a statute to achieve the same result as another statute, it would have used similar terms in both statutes).
¶ 84 Particularly given the inherent complexity of tax statutes, and the boundless creativity of tax advisors (who I do not criticize for doing their jobs), I think the opposite is true: only if the specific tax statutes themselves expressly preclude the operation of a tax abuse statute is the tax abuse statute rendered impotent to meet its purpose. See Gen. Motors Corp. v. City & Cty. of Denver , 990 P.2d 59, 70 (Colo. 1999) ("[C]ourts must construe tax exemptions narrowly, and in favor of the taxing authority.").
¶ 85 For these reasons, I would reverse the summary judgment in Oracle's favor and direct entry of judgment in favor of the Department.

I agree with the majority's analysis and application of sections 39-22-303(8), 39-22-303(11)(a), and 39-22-303(12)(c), C.R.S. 2017. I believe that analysis is sound, even though I find it hard to believe that the result was what the General Assembly had in mind when it attempted to codify the water's edge exemption. A court's job is to apply statutes as written by the General Assembly, not to rewrite statutes in a way that judges think they should have been written. Burnett v. State Dep't of Nat. Res. , 2015 CO 19, ¶ 12, 346 P.3d 1005.